UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WARREN WIGGINS )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>NATIONAL ENTERPRISE SYSTEMS, INC. )<br>    Defendant )<br>) | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED<br><br><br>JANUARY 9, 2013 |

## COMPLAINT

1. This is a suit brought by a consumer under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.,* and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* against National Enterprise Systems, Inc. ("NES"). Plaintiff also includes pendent state law claims for NES's violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat § 42-110a *et seq*.

2. Plaintiff, Warren Wiggins, is a consumer residing in New Britain, Connecticut.

3. NES is an Ohio corporation, is a "debt collector" as defined by the FDCPA, and is registered with the Connecticut Department of Banking as a Consumer Collection Agency.

4. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

5. This Court has jurisdiction over NES because it regularly collects debts in Connecticut.

6. Venue is proper because the transaction alleged herein occurred in this state.

7. In or around 2006, Plaintiff entered into a loan agreement to finance his college education, resulting in a consumer debt ("the Debt").

8. Plaintiff's grandfather was a cosigner for the Debt.

9. Following Plaintiff's graduation in 2010, his father offered to make the monthly payments on Plaintiff's behalf, and Plaintiff accepted.

10. Plaintiff's father commenced making payments, and, at some time thereafter and unbeknownst to Plaintiff, he ceased making payments.

11. On or around November 14, 2012, NES contacted Plaintiff's grandfather, who is 80 years old, in an attempt to collect the Debt.

12. In order to induce Plaintiff's grandfather to make a payment, the NES representative with whom he spoke threatened to garnish his firefighter's pension and put a lien on his house if he didn't pay the Debt.

13. Following his conversation with NES, Plaintiff's grandfather believed that NES would imminently place a lien on his house and/or garnish his pension, and Plaintiff's grandfather became extremely upset.

14. Plaintiff's grandfather contacted Plaintiff to advise him of the situation and that he had worked too hard to have his pension garnished. Hearing that his grandfather was so upset and distressed in turn made Plaintiff upset and distressed.

15. The following day, on or around November 15, 2012, NES contacted Plaintiff's cell phone, phone number 860-680-XXXX, in an attempt to collect the Debt. The cell phone's caller id reflected that these calls came from phone number 860-733-0046.

16. Those calls were placed with the use of an automatic telephone dialing system and/or an artificial or prerecorded voice.

17. Plaintiff never gave NES permission to contact his cell phone for any reason, and he was not even the owner of phone number 860-680-XXXX at the time he applied for the loan.

18. During NES's initial call to Plaintiff's cell phone on the morning of November 15, 2012, Plaintiff spoke with a female NES representative who identified herself as Audrey Rice ("Rice").

19. Rice told Plaintiff that the account was 180 days past due and that he had until 4:00 pm that day to pay $17,227 or NES would garnish his grandfather's pension and place a lien on his grandfather's home.

20. NES did not intend to and was not able to take this threatened action if the demanded amount was not paid by the stated deadline.

21. This false and deceptive threat caused Plaintiff to become further distressed, and he asked whether he would be able to work out a payment plan. Rice responded dishonestly and deceptively by stating that although she could settle the Debt for $14,000, Plaintiff would still need to pay that amount by 4:00 pm that day to avoid the garnishment and lien.

22. Following this conversation, Plaintiff became increasingly distressed and contacted his girlfriend, who works as a debt collector for another company, for advice.

23. On the advice of his girlfriend, Plaintiff gave NES permission to speak with her about the account. However, when Plaintiff's girlfriend initially attempted to speak with Rice, Rice continually cut her off and spoke over her.

24. Following this exchange, NES contacted Plaintiff's cell phone a second time, and Plaintiff spoke with Rice, who advised Plaintiff that he needed to "man up and ask [his] grandfather for the money."

25. NES called Plaintiff's cell phone a total of 3 times on November 15, 2012 and once on November 16, 2012.

26. Some or all of these subsequent calls to Plaintiff's cell phone may have involved autodialing equipment.

27. Also during this time period, NES continued to contact Plaintiff's grandfather and continued its false and deceptive threats to imminently garnish his pension and place a lien on his home.

28. As a result of the above-described conduct, Plaintiff suffered severe emotional distress.

29. NES violated the TCPA, 47 U.S.C. § 227(b), each time it called Plaintiff's cell phone using an automatic telephone dialing system or an artificial or prerecorded voice.

30. Pursuant to 47 U.S.C. § 227(b)(3), NES is liable to Plaintiff in the amount of $500 for each call made to Plaintiff's cell phone and, to the extent that the TCPA violations are deemed to be intentional, it is liable for up to $1,500.

31. NES violated the FDCPA § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of a debt, and FDCPA as described above. Specifically, NES gave Plaintiff only 6 hours to come up with $14,000 when it had no intention of taking the threatened action as a consequence of failure to meet that arbitrary deadline, told Plaintiff to "man up", and made false threats that it had no intention to carry out that were intended to distress Plaintiff and induce him to making a payment.

32. NES violated FDCPA § 1692e by using unfair practices and/or false, deceptive, or misleading representations or means in connection with the collection of the Debt. Specifically, NES misrepresented the character and legal status of the Debt, NES implied that the nonpayment of the Debt would result in the imminent seizure or garnishment of property when it had no intention of taking such action, and NES threatened to take an action that it did not intend to take or that could not legally be taken.

33. NES's conduct also constitutes unfair and deceptive acts in violation of CUTPA that have caused Plaintiff ascertainable losses, including, but not limited to, costs associated with receipt of NES's improper communications on electronically powered devices, as well as emotional distress, embarrassment, shame, family tension and fear of his grandfather's financial ruin.

**WHEREFORE**, the Plaintiff claims statutory damages of $500 for every call made to the his cell phone utilizing autodialing equipment pursuant to 47 U.S.C. § 227(b)(3) plus damages for any additional calls that may occur; actual damages and statutory damages of up to $1,000 pursuant to 15 U.S.C. § 1692k(a); attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); and actual damages, attorney's fees and costs, and punitive damages pursuant to Conn. Gen. Stat. §42-110g.

                                    **PLAINTIFF WARREN WIGGINS,**

                        By: /s/ Daniel S. Blinn
                             Daniel S. Blinn (ct02188)
                             Consumer Law Group, LLC
                             35 Cold Spring Rd, Suite 512
                             Rocky Hill, CT  06067-9997
                             dblinn@consumerlawgroup.com
                             Tel (860) 571-0408
                             Fax (860) 571-7457